# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| KASIE RACQUELLE LEE A., | Case No.: 1:22-cv-00427-REP |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Pending is Plaintiff Kasie Racquelle Lee A.'s Petition for Review (Dkt. 1), appealing the Social Security Administration's denial of her disability claim. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Report and Recommendation.

## I. ADMINISTRATIVE PROCEEDINGS

On January 6, 2020, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits; Plaintiff also protectively filed a Title XVI application for supplemental security income. In both applications, Plaintiff alleged disability beginning August 10, 2019. The claims were originally denied on May 7, 2020, and again on reconsideration on August 6, 2020. On September 22, 2020, Plaintiff filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On April 22, 2021, ALJ David Wells held a telephonic hearing (due to the COVID-19 Pandemic), at which time Plaintiff, appearing with her attorney Heather Farnsworth, testified. Richard Ostrander, an impartial vocational expert, also appeared and testified at the same hearing.

On July 28, 2021, the ALJ issued a decision denying Plaintiff's claim, finding that she was not disabled within the meaning of the Social Security Act. Plaintiff timely requested

**REPORT AND RECOMMENDATION - 1**

review from the Appeals Council.  On August 11, 2022, the Appeals Council denied Plaintiff's

Request for Review, making the ALJ's decision the final decision of the Commissioner of Social

Security.

Plaintiff is now represented by attorney Bryan Konoski and, having exhausted her

administrative remedies, brings this case.  She contends the ALJ erred in four respects: (i) by

improperly evaluating the credibility of her sworn hearing testimony; (ii) by not building "an

accurate and logical bridge" to the limitations related to time-off-task and absenteeism in her

residual functional capacity ("RFC"); (iii) by not accounting for her social limitations in her

RFC; and (iv) by not finding her anxiety and panic attacks to be medically determinable

impairments.  Pl.'s Brief at 1, 10, 12-28 (Dkt. 22).  Plaintiff requests that the Court either reverse

the ALJ's decision and find that she is entitled to benefits, or remand the case for further

proceedings.  *Id*. at 29.

## II.  <u>STANDARD OF REVIEW</u>

To be upheld, the Commissioner's decision must be supported by substantial evidence

and based on proper legal standards.  42 U.S.C. § 405(g);  *Trevizo v. Berryhill*, 871 F.3d 664 (9th

Cir. 2017).  Findings as to any question of fact, if supported by substantial evidence, are

conclusive.  *See* 42 U.S.C. § 405(g).  If there is substantial evidence to support the ALJ's factual

decisions, they must be upheld, even when there is conflicting evidence.  *See Treichler v.

Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v.

Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).  The standard requires more than a scintilla but less

than a preponderance.  *Trevizo*, 871 F.3d at 674.  It "does not mean a large or considerable

amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

**REPORT AND RECOMMENDATION - 2**

With respect to questions of fact, the Court is to review the record as a whole to decide whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ.  *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051.  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Treichler*, 775 F.3d at 1098.  Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig*, 681 F.3d at 1051.  In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015).  Considerable weight is given to the ALJ's construction of the Social Security Act.  *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009).  However, this Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## III.  REPORT

### A.     Sequential Process

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  SGA is work activity that is both substantial and gainful.  20 C.F.R. §§ 404.1572, 416.972.  "Substantial

work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized.  20 C.F.R. §§ 404.1572(b), 416.972(b).  If the claimant has engaged in SGA, disability benefits are denied regardless of her medical condition, age, education, and work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant has not engaged in SGA, the analysis proceeds to the second step.  Here, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 10, 2019 (the alleged onset date).  AR 20.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is "not severe" if it does not significantly limit the claimant's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1522, 416.922.  If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Here, the ALJ found that Petitioner has the following severe medically determinable impairments: "coronary angiography with stent placement, obesity, carpal tunnel syndrome, recurrent arrhythmias, mild degenerative disc disease, and depression."  AR 20.

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the

answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the ALJ concluded that Petitioner's above-listed medically determinable impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments.  AR 20-23.

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's RFC is sufficient for the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments.  20 C.F.R. §§ 404.1545, 416.945.  An individual's past relevant work is work she performed within the last 15 years, or 15 years prior to the date that disability must be established, if the work lasted long enough for the claimant to learn to do the job and be engaged in SGA.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.  Here, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: She can lift, carry, push, and pull 10 pounds occasionally but less than 10 pounds on a frequent basis.  Could stand and/or walk for up to 2 hours in an 8 hour day and sit for 6 hours in an 8 hour workday.  She can use her bilateral upper extremities frequently for manipulating activities.  She could occasionally climb ramps and stairs but could never climb ladders, ropes, or scaffolds.  She can frequently balance.  She can only occasionally kneel, crouch, or crawl.  She should avoid concentrated exposure to vibration, unprotected heights, and moving mechanical machinery.  She would be off task up to 10% of the time [ ] in an 8 hour workday.  She would be absent up to 1 day per month.  She can perform simple, routine, repetitive tasks.  She is limited to making simple work-related decisions utilizing judgment or dealing with changes in the work setting.

AR 28.

**REPORT AND RECOMMENDATION - 5**

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).  If the claimant can do such other work, she is not disabled; if the claimant cannot do other work and meets the duration requirement, she is disabled.  Here, the ALJ found that Plaintiff was unable to perform any past relevant work as a tractor trailer driver and nurse's assistant, but nonetheless was capable of working full-time in the following occupations: telephone information clerk, survey worker, and credit card interviewer.  AR 27-29.  Based on these findings, the ALJ concluded that Plaintiff was not under a disability from August 10, 2019 (the alleged onset date) through the date of the July 28, 2021 decision.  AR 29.

**B.      Analysis**

Plaintiff's four arguments can be distilled into three distinct claims of error: (i) the ALJ erred in questioning her credibility; (ii) the ALJ improperly assessed her RFC; and (iii) the ALJ erred in not finding her anxiety and panic attacks to be medically determinable impairments. Pl.'s Brief at 1, 10, 12-28 (Dkt. 22).  The Court considers each argument below, but considers them in the order that most closely aligns with the sequential process and the ALJ's analysis.

1.      The ALJ Did Not Err In Finding That Plaintiff's Anxiety and Panic Attacks Were Not Medically Determinable Impairments

At steps two and three of the sequential process, an ALJ must determine whether a claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listed impairment.  *Supra*.  If so, that claimant is disabled.  *Id*.  But critically, *all* medically determinable impairments – even those not deemed severe – must be considered when

**REPORT AND RECOMMENDATION - 6**

determining a claimant's RFC at step four of the sequential process.  20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, *including your medically determinable impairments that are not 'severe,'* . . . when we assess your residual functional capacity.") (internal citations omitted, emphasis added).  Plaintiff contends that the ALJ ignored this directive by failing to consider her anxiety and panic attacks as medically determinable impairments and, thus, failing to incorporate their corresponding limitations in her RFC.  Pet.'s Brief at 27-28 (Dkt. 22).  The Court disagrees.

A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. §§ 404.1521, 416.921.  It therefore "must be established by objective medical evidence from an acceptable medical source."  *Id*.  A claimant's "statement of symptoms" or a mere "diagnosis" is not enough.  *Id*.; *see also Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) ("[U]nder no circumstances may the existence of an impairment be established on the basis of symptoms alone.").

Here, Plaintiff relies on a single medical record and her own hearing testimony to establish that her anxiety and panic attacks amount to medically determinable impairments.  Pl.'s Brief at 28 (Dkt. 22) (citing and quoting AR 55-56, 554-55).  But these instances contain only Plaintiff's self-reported problems with anxiety and panic attacks.  AR 554-55.  Importantly, Plaintiff points to no endorsement of those conditions, or their associated limitations, from acceptable medical sources.  These self-reports, without more, do not establish that Plaintiff's anxiety and panic attacks constitute medically determinable impairments.  *See Belknap v. Astrue*, 364 F. App'x 353, 355 (9th Cir. 2010) (physicians' diagnoses based on claimants' self-reporting – rather than medical signs and laboratory findings – cannot establish medically determinable impairments); *see also Ukolov*, 420 F.3d at 1006 (portions of treatment records that are based

**REPORT AND RECOMMENDATION - 7**

solely on the claimant's own "perception or description" of his problems do not support a finding of a medically determinable impairment); *Jones v. Berryhill*, 2018 WL 3797499, at *4 (D. Idaho 2018), *aff'd sub nom. Jones v. Saul*, 784 Fed. Appx. 546 (9th Cir. 2019).

Remand is not warranted on this issue.

2.    The ALJ Did Not Err in Questioning Plaintiff's Subjective Symptom Testimony

Plaintiff argues that the ALJ erred in his treatment of Plaintiff's testimony regarding the severity of her symptoms. Pl.'s Brief at 12-20 (Dkt. 22). According to Plaintiff's testimony and written statements, she cannot work because she has numbness in her hands, spinal problems, nerve damage in her back, chest pains, shortness of breath, depression, anxiety, panic attacks, diabetes, seizures, and is exhausted all of the time. AR 45-58, 407. Plaintiff reports that, due to these conditions and related pain, she has difficulty performing simple, day-to-day tasks; cannot drive comfortably; has trouble bending, lifting, reaching, walking, sitting, standing, and going up and down stairs; and cannot sleep for more than three hours at a time, so must frequently nap throughout the day. AR 45-55, 407-08, 412-413.

As the trier-of-fact, the ALJ is in the best position to make credibility determinations and, for this reason, his determinations are entitled to great weight. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id*. at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if such objective medical evidence exists, and the ALJ has not determined that the claimant is malingering, the ALJ must provide clear and convincing reasons before rejecting the claimant's testimony regarding the severity of the claimant's symptoms. *Id*.

**REPORT AND RECOMMENDATION - 8**

Generalized findings will not satisfy this standard.  The reasons an ALJ provides for rejecting a claimant's symptom testimony "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell*, 947 F.2d at 345-46).  This requires that the ALJ "identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* at 493 (quoting *Reddick*, 157 F.3d at 722).  If there is substantial evidence, courts will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).  Even when the evidence can support either outcome, a court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1098.

The ALJ's decision satisfies these standards.  The ALJ found that Plaintiff's impairments could reasonably be expected to cause the symptoms alleged, but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.  AR 24-25.  The ALJ's justification in this regard amounts to clear and convincing reasons for questioning Plaintiff's symptom testimony.

First, the ALJ concluded that Plaintiff's daily activities support a finding that she is not as limited as she alleges.  AR 24-25.  The ALJ observed that, despite Plaintiff's claimed inability to work, she nonetheless prepares meals and helps her daughter with school work; cleans, does laundry, and cooks on her own; for social activities, plays board games, attends barbeques, goes boating, watches movies, and attends her daughter's sporting events; and can walk up to a mile on some days before needing to rest a few minutes.  AR 24 (citing AR 407-14).  Where a claimant's reported activities conflict with the claimant's description of the severity of her pain-related limitations, that is a clear and convincing reason for discounting a claimant's assertion of

disability. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) ("In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record among other factors."); *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination.").

Second, the ALJ noted evidence of improvement in Plaintiff's condition with treatment over time. AR 25-26 (citing AR 490 (Plaintiff reporting in October 2019 that she "has been doing fairly well" and "[d]enies chest pains or shortness of breath"); AR 499 (Plaintiff reporting in November 2019 that she "denies chest pain, palpitations, shortness of breath, and jaw pain"); AR 783 (Plaintiff denying any pain as of March 16, 2020, following carpal tunnel release surgery); AR 780 (Plaintiff reporting on March 26, 2020 that "the numbness that she had in her fingers previously has resolved")). "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017); *see also* 20 C.F.R. § 416.929(c)(3)(iv)-(v) ("An ALJ may discount a claimant's subjective complaints if the record shows effective treatment."). The Court is mindful that reports of improvement must "be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). But when considering the record as a whole, there was substantial evidence here that Plaintiff's treatment was having some positive effect, and the ALJ was entitled to rely on this evidence to discount Plaintiff's subjective symptom testimony.

Third, the ALJ emphasized Plaintiff's work history and efforts to secure work *after* her alleged onset date. AR 26 (citing AR 914 (Plaintiff reporting in July 2020 that "she works as a

part-time bartender"); AR (Plaintiff reporting in September 2020 that "[s]he bartends in the evening and still smokes when she works"); AR 983 (Plaintiff reporting in October 2020 that "[s]he quit her job and is starting another so she isn't around tobacco as much"); AR 965 (Plaintiff reporting in November 2020 that "[s]he stopped working at the bar and is driving truck now"); AR 934 (Plaintiff reporting in February 2021 that she "has quit working at the bar hoping it would help [her to stop smoking tobacco]")).  A claimant's job search efforts undermine her allegations of disabling impairments. *Bray*, 554 F.3d at 1227 (permissible for an ALJ to consider evidence of a claimant's job search and job training activities in assessing credibility of claimant's professed inability to work).

Finally, the ALJ concluded that Plaintiff's claims do not align with the medical record. Specifically, whereas Plaintiff contends that her impairments are altogether debilitating, there are few objective findings that substantiate her claimed limitations.  AR 26.  An ALJ may rely on a lack of corroborative medical evidence to discount a claimant's subjective allegations so long as it is not the sole basis for doing so.  *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

Together, these reasons amount to clear and convincing explanations as to why the ALJ found Plaintiff's testimony not entirely credible.  Crucially, the Court's role is not to decide whether Plaintiff is disabled under the applicable statutes and regulations, or even whether she suffers from chronic, disabling limitations.  In assessing Plaintiff's credibility, the ALJ was not focused on whether Plaintiff had pain or limiting mental disorders, but on whether these impairments prevented her from engaging in any full-time work.  *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("Even where . . . activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims

**REPORT AND RECOMMENDATION - 11**

of *totally debilitating* impairment.") (emphasis added).  It is the reasonableness of *these* findings that the Court must review on appeal.

On these discrete points, Plaintiff offers no substantive challenge.  She instead argues that, while the ALJ may have critiqued Plaintiff's function report (and Plaintiff's self-reported limitations reflected therein), the ALJ did not separately address her hearing testimony.  Pl.'s Brief at 14 (Dkt. 22) ("The problem in this credibility analysis is that the only <u>statements</u> that the ALJ addressed and expressly considered are those that appear in [the function reports].  The ALJ did not address or analyze any allegations the Plaintiff made in her sworn hearing testimony.  As such, the ALJ failed to evaluate the credibility of the Plaintiff's testimony.  This is reversible error.") (emphasis in original).  Plaintiff expects more than what is required in this setting.

There is no requirement that an ALJ refute each and every allegation a claimant makes in regard to her alleged impairments, but rather is only "required to make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'"  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)).  Plaintiff's testimony may add real-world context to the alleged extent of her limitations (*see* Pl.'s Brief at 15-18 (Dkt. 22)), but there is nothing fundamentally different between her later-in-time hearing testimony and her preceding functional reports.  Regardless, in either case, the ALJ questioned the limiting effects of Plaintiff's impairments.  The ALJ's findings in this respect are sufficiently specific to permit the Court to conclude that he did not arbitrarily discredit Plaintiff's testimony.

Though possibly-conflicting evidence may not have been given the weight that Plaintiff would have preferred, the ALJ's decision to question Plaintiff's subjective symptom allegations contains clear and convincing reasons for doing so.  The Court uses – as it must – *that* standard.  Accordingly, the ALJ will not be second-guessed given the justifications provided.  *Batson*, 359

F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision.").

Remand is not warranted on this issue.

3.      The ALJ Properly Assessed Plaintiff's RFC

When considering Plaintiff's mental impairments, the ALJ remarked that "there were very few medical records relating to complaints about mental health problems."  AR 26; *see also supra* (discussing whether Plaintiff's anxiety and panic attacks were medically determinable impairments).  Even so, the ALJ gave Plaintiff "the overall benefit of the doubt" and considered Plaintiff's mental health complaints within her RFC.  AR 26.  To wit: the ALJ determined that, owing to her alleged mental health issues, Plaintiff would be off task up to 10% of the time and absent one day per month.  AR 24, 26.  Plaintiff argues that the ALJ failed to explain the basis for these limitations and questions why the ALJ did not find her to be *more* limited in either of these aspects.  Pl.'s Brief at 21-23 (Dkt. 22) (citing AR 67-68 (vocational expert testifying that, for unskilled jobs, greater limitations than those the ALJ identified in being off-task or absent from work would render a claimant unemployable)).  Plaintiff additionally argues that the ALJ altogether failed to account for her social limitations when crafting her RFC.  *Id*. at 24-27.  The record, however, supports neither of these arguments.

To begin, a claimant's RFC is the most she can do despite her limitations.  *Supra* (citing 20 C.F.R. §§ 404.1545, 416.945).  An ALJ considers all relevant evidence in the record when making this determination.  *Id*.  It is "proper for an ALJ to limit a hypothetical to those impairments that are supported by substantial evidence in the record."  *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).  In the same way, an ALJ is not bound to accept as true the restrictions set forth in a hypothetical if they are not supported by substantial evidence."  *Id*. at

**REPORT AND RECOMMENDATION - 13**

1164.  In short, "[a]n ALJ is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence." *Id*. at 1164-65.

Here, Plaintiff's first argument is divined from the vocational expert's responses to the ALJ's hypotheticals.  It essentially assumes greater limitations – being off-task more than 10% of the time and/or being absent more than once a month – than what the record actually supports. To be sure, as the ALJ stated, there is scant evidence of any mental impairments to begin with, let alone any evidence of these alleged impairments' related limitations on Plaintiff's ability to work, including being off-task or absent from work.  *Supra* (citing AR 26 (ALJ describing absence of medical records relating to Plaintiff's mental health problems, but still giving Plaintiff the "overall benefit of the doubt")).  Plaintiff likewise cites no evidence from acceptable medical sources that validates the point she is trying to make.

Given this gap in the record and the absence of substantial evidence to the contrary, the ALJ was not obligated to accept as true either the existence of any mental impairments, or the vocational expert's testimony regarding the hypothetical impact of those impairments on Plaintiff's job prospects.  That the ALJ nonetheless inserted these limitations within Plaintiff's RFC does not change this fact.  *See, e.g.*, *Mills v. Comm'r of Soc. Sec. Admin.*, 2014 WL 4195012, at *4 (E.D. Cal. 2014) ("Indeed, plaintiff can hardly fault the ALJ for giving him the benefit of the doubt and assessing an RFC *that is more favorable* to plaintiff than most of the medical opinions in the record.") (emphasis added).  Nor does it somehow operate to shift the burden for establishing disabling limitations from Plaintiff to the ALJ.  *See Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007) ("The claimant bears the burden of proving steps one through four [of the sequential process], consistent with the general rule that 'at all times, the burden is on the claimant to establish her entitled to disability insurance benefits.'") (quoting *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998)).  Adopting Plaintiff's argument would require the ALJ to

**REPORT AND RECOMMENDATION - 14**

prove that Plaintiff was less limited than she claimed.  But that is not the ALJ's burden.  In short, without credible evidence that Plaintiff would be off-task or absent from work more often than what the ALJ already (and favorably) proposed, it cannot be said that the ALJ improperly assessed Plaintiff's RFC.

And regarding Plaintiff's second argument, Plaintiff correctly highlights that her RFC does not incorporate her mild social limitations that the ALJ considered at step two of the sequential process.  Pl.'s Brief at 25-27 (Dkt. 22) (citing *Patricia C. v. Saul*, 2020 WL 4596757 (S.D. Cal. 2020)).  But this argument ignores the ALJ's specific admonition that "[t]he limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process."  AR 23 (noting further that "[t]he mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning").  And unlike *Patricia C.*, the ALJ here *did* analyze the impact of Plaintiff's social limitations on her RFC, stating:

> In interacting with others, the claimant has a mild limitation.  The claimant has alleged that she prefers to avoid being around others.  *However, there is very little evidence in the file to suggest that the claimant has any significant difficulty getting along with others.  Her function report indicates that she has a fairly good social network.*  Nevertheless, giving the claimant the overall benefit of the doubt the undersigned will find that the claimant has mild limitation in her ability to interact with others.

*Id*. (emphasis added); *compare with Patricia C.*, 2020 WL 4596767, at *13.  This analysis makes clear that the ALJ considered Plaintiff's mild social limitations and, at the same time, "shed[s] sufficient light on why the[se limitations] found by the ALJ were not included in the RFC." *Patricia C.*, 2020 WL 4596757, at *13 n.11.  Simply put, the ALJ did not incorporate Plaintiff's mild social limitations in her RFC because he found that they do not cause a significant limitation on Plaintiff's ability to work.  *See Sylvester H. v. Kijakazi*, 2022 WL 4466717, at *8

**REPORT AND RECOMMENDATION - 15**

(C.D. Cal. 2022) ("While it is true that an ALJ need not include limitations in the RFC 'if the record supports a conclusion that the non-severe impairment does not cause a significant limitation in the claimant's ability to work,' the ALJ must still 'actually review[ ] the record and specif[y] reasons supported by substantial evidence for not including the non-severe impairment' in order to avoid committing legal error.") (quoting *Koshak v. Berryhill*, 2018 WL 4519936, at *8 (C.D. Cal. 2018)).  Again, Plaintiff supplies no evidence in the record suggesting otherwise.

Remand is not warranted on this issue.

## IV.  CONCLUSION

The ALJ, as fact-finder, must weigh the evidence, draw inferences from facts, and determine credibility.  If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, the Court may not substitute its interpretation for that of the ALJ.  *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).  The ALJ has provided reasonable and rational support for his well-formed conclusions, even if such evidence is susceptible to a different interpretation.  Accordingly, the ALJ's decisions as to Plaintiff's disability claim were based upon proper legal standards and supported by substantial evidence.  The Commissioner's decision should be affirmed and Plaintiff's Petition for Review should be denied.

## V.  RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that the decision of the Commissioner be AFFIRMED, that Plaintiff's Petition for Review (Dkt. 1) be DENIED, and this action be DISMISSED in its entirety, with prejudice.

Pursuant to District of Idaho Local Civil Rule 72.1(b)(2), a party objecting to a Magistrate Judge's recommended disposition "must serve and file specific, written objections, not to exceed twenty (20) pages . . . within fourteen (14) days . . ., unless the magistrate or district judge sets a different time period."  Additionally, the other party "may serve and file a

response, not to exceed twenty (20) pages, to another party's objections within fourteen (14)

days after being served with a copy thereof."

DATED:  February 20, 2024

_____

Honorable Raymond E. Patricco
Chief U.S. Magistrate Judge

**REPORT AND RECOMMENDATION - 17**